IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JENNY M. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 309-021 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Based on claims of disability dating back to January 1, 2000, Plaintiff applied for SSI benefits on March 23, 2004. Tr. ("R"), pp. 79-81. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 34-35, 46-48, 51-54. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held

an initial hearing on May 5, 2006, as well as a supplemental hearing on March 28, 2007. R. 44, 570-608, 609-25. Plaintiff, who was represented by counsel, appeared and testified on her own behalf at both hearings. R. 574-600. The ALJ also heard testimony from Plaintiff's mother at both hearings and from a vocational expert ("VE") at the supplemental March 2007 hearing. R. 600-08, 615-24. On April 13, 2007, the ALJ issued an unfavorable decision. R. 19-27.

Applying the sequential evaluation process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in any substantial gainful activity since January 1, 2000, the alleged onset date (20 C.F.R. § 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: carpal tunnel syndrome (both hands) - mild; myofascial pain syndrome (dubious); fibromyalgia; miscellaneous arthritic aches and pains; history of asthma; marijuana abuse, plus anxiety and depression (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform medium exertional level work.[1] She is limited to occasional balancing, climbing, crawling, crouching, kneeling and stooping. She is limited to frequent bilateral reaching (including overhead) and

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). Notably, Social Security Ruling ("SSR") 83-10 further explains that, in relation to medium work as defined in the regulations, the "use of the arms and hands is necessary to grasp, hold, and turn objects." SSR 83-10.

2

occasional exposure to inhaled irritants (dust, fumes, smoke, chemicals, and noxious gases). The claimant has good abilities to understand, remember, and carry out simple instructions; fair to good abilities with detailed and complex instructions, as well as to maintain prolonged attention and concentration. The claimant has good abilities to relate to co-workers and supervisors; fair to good abilities to deal with the public; and fair to good abilities to handle stress, behave in an emotionally stable and socially acceptable manner, as well as to demonstrate reliability. Thus, the claimant is best suited for simple work which does not require prolonged interpersonal interactions and which does not give claimant free and unfettered access to marijuana. However, the claimant is unable to perform past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform[2] (20 C.F.R. §§ 416.960(c) and 416.966). Accordingly, the claimant has not been under a disability, as defined in the Social Security Act, since March 23, 2004, the date the application was filed.

R. 21-27. When the Appeals Council ("AC") denied Plaintiff's request for review, R. 4-6, the Commissioner's decision was final for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting that the case be remanded to the Commissioner for further consideration. Specifically, Plaintiff argues that the ALJ (1) improperly denied Plaintiff's request to cross-examine Dr. Basil Holoyda, (2) failed to consider Plaintiff's migraine headaches, singly and in combination with her other impairments, (3) improperly rejected the opinion of Dr. Marvin Long, a

---

[2] At the supplemental hearing in March 2007, the VE testified that such jobs would include work as a companion and hand packager. R. 621. While the VE also testified that Plaintiff could perform work as a storage facility clerk or parking lot attendant, R. 623-24, this testimony was based on hypothetical limits on Plaintiff's abilities that were not ultimately included in the ALJ's assessment of Plaintiff's RFC as set forth in his opinion.

3

consulting psychologist, and (4) improperly evaluated Plaintiff's credibility. (See generally doc. no. 11) (hereinafter "Pl.'s Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire

4

record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff first argues that the ALJ erred in failing to subpoena Dr. Holoyda for the supplemental hearing held in March 2007. By way of background, the Court notes that at the May 2006 hearing, the ALJ granted the request by Plaintiff's counsel for a neurological consultative examination since the record did not contain enough medical evidence regarding the neurological problems Plaintiff complained of. R. 606. Thereafter, the ALJ requested that Dr. Holoyda perform the examination regarding Plaintiff's neurological difficulties, and after performing the examination, Dr. Holoyda submitted his report to the ALJ. R. 554-60. Upon receipt, the ALJ sent Dr. Holoyda's report to Plaintiff's counsel with a cover letter dated July 31, 2006, explaining the policy regarding the procedure for questioning Dr. Holoyda with respect to the findings contained in his report:

> You may request an opportunity to question witnesses, including the author(s) of the enclosed report(s). I will grant a request to question a witness

5

> if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to his or her appearance.

R. 208. In a letter dated August 15, 2006, Plaintiff's counsel requested that the ALJ subpoena Dr. Holoyda so that he could be cross-examined at the next hearing regarding his report, which Plaintiff's counsel alleged to be deficient because Dr. Holoyda met with Plaintiff for only ten minutes and performed only a limited number of tests. R. 210.

When Dr. Holoyda was not present at the supplemental March 2007 hearing, Plaintiff's counsel objected to Dr. Holoyda's report and the ALJ's failure to subpoena Dr. Holoyda for the hearing. R. 612. Specifically, Plaintiff's counsel stated that he objected to the report because Dr. Holoyda "essentially . . . did not examine [Plaintiff]." R. 612. Plaintiff's counsel also noted that he had sent Dr. Holoyda a number of medical records from Plaintiff's physicians that Dr. Holoyda had cited in his report. Id. Plaintiff's counsel further argued that although Dr. Holoyda had gone into "great detail" about these medical records, which, according to Dr. Holoyda's report, detailed Plaintiff's history of carpel tunnel syndrome, fibromyalgia, chronic pain, numbness in her hands and extremities, and headaches, Dr. Holoyda still found that "there [was] nothing wrong" with Plaintiff. R. 554-55, 612. In response to these arguments, the ALJ stated, "In terms of subpoenaing physicians, we don't do that." R. 612. The ALJ went on to acknowledge that while there may have been "some gaps" in Dr. Holoyda's report, it was "not a problem" because the report was only "one piece of evidence." R. 613. He then continued with the supplemental hearing.

6

Approximately two weeks after the supplemental hearing, the ALJ issued his unfavorable decision. In the portion of his opinion explaining his reasons for refusing to subpoena Dr. Holoyda, the ALJ stated that counsel had not followed the proper procedure for objecting to the consultative examination and that the objection to the examination and the request for the subpoena were untimely and therefore waived. R. 19. The ALJ went on to accept Dr. Holoyda's report to the extent that it related to Plaintiff's neurological difficulties, including difficulties in using her hands. R. 23. The ALJ also found, in assessing Plaintiff's RFC, that Plaintiff was limited to frequent bilateral reaching (including overhead), which is consistent with Dr. Holoyda's findings regarding the limitations on Plaintiff's movements in her upper extremities. R. 23, 559.

The Eleventh Circuit has held that a claimant's right to procedural due process is violated when Social Security benefits are denied based on post-hearing medical reports and the claimant is not given the opportunity to subpoena and cross-examine the authors of such reports. Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (*per curiam*) (citing Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985) and Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981)). The Court of course acknowledges that the situation in the instant case is slightly different because a supplemental hearing was held after Dr. Holoyda submitted his report. Thus, Dr. Holoyda's report is not a "post-hearing medical report" as referenced in Demenech. However, Dr. Holoyda was not subpoenaed or cross-examined about the basis for his opinions contained in the report, and thus, the effect was the same as if no supplemental hearing was held and Dr. Holoyda's report was submitted "post-hearing."

7

In any event, it is apparent that the ALJ relied on Dr. Holoyda's report in making his decision to deny Plaintiff benefits. Indeed, as noted above, the ALJ specifically directed Dr. Holoyda to perform a consultative examination regarding Plaintiff's neurological difficulties because the record did not contain enough medical evidence regarding the neurological problems Plaintiff complained of. R. 554, 606. Furthermore, the ALJ states in his opinion that "Dr. Holoyda assessed only neurologically derived limits (such as hand use), and his report was accepted for that single purpose." R. 23. Finally, as noted above, Dr. Holoyda's opinion that Plaintiff could do frequent bilateral reaching is reflected in the ALJ's assessment of Plaintiff's RFC. R. 23, 559. Thus, the record reflects that the ALJ relied on Dr. Holoyda's report in his decision, but Dr. Holoyda was not subpoenaed or cross-examined about the basis for the opinions contained his report.

In explaining his reasons for not subpoenaing Dr. Holoyda, the ALJ stated that (1) counsel had not followed the procedures for objecting to the consultative examination as outlined in 20 C.F.R. § 416.919j, and (2) Plaintiff's objection to the exam and request for subpoena at the hearing were untimely and therefore waived. R. 19. As to the first reason, the Court notes that 20 C.F.R. § 416.919j provides as follows: "You or your representative may object to your being examined by a medical source we have designated to perform a consultative examination. If there is a good reason for the objection, we will schedule the examination with another medical source." The regulation then goes on to list what situations may constitute good reasons for objecting to the designated medical source. See 20 C.F.R. § 416.919j. Notably, the language of § 416.919j indicates that objections to the designated medical source should be made prior to examination being performed. In this

8

case, Plaintiff did not have an objection to Dr. Holoyda performing the consultative examination. Rather, Plaintiff's issue was with the basis for the opinions contained in Dr. Holoyda's report, given the alleged short duration of the examination and limited number of tests Dr. Holoyda performed. R. 210, 612. Stated differently, Plaintiff's issue with Dr. Holoyda arose after the examination was performed, not before. Thus, the regulation cited by the ALJ appears to be inapplicable to the situation, and it is unclear why the ALJ relied on this regulation regarding objections to designated medical sources in explaining his reasoning for refusing to subpoena Dr. Holoyda.

As to the ALJ's second reason for not subpoenaing Dr. Holoyda, the ALJ suggests in his opinion that Plaintiff's counsel first objected to Dr. Holoyda's report and requested that Dr. Holoyda be subpoenaed at the supplemental March 2007 hearing, thus resulting in the conclusion that the objection and request were untimely. R. 19. However, as noted above, Plaintiff's counsel first objected to the basis for Dr. Holoyda's report and requested that he be subpoenaed several months earlier in his letter to the ALJ, dated August 15, 2006. R. 210. Notably, the applicable regulation states that requests for witness subpoenas must be submitted in writing at least five days prior to the hearing date. See 20 C.F.R. § 416.1450(d)(2). The supplemental hearing was not scheduled until March 2007, and the record demonstrates that Plaintiff's counsel objected to Dr. Holoyda's report and requested that he be subpoenaed well more than five days in advance of that hearing date in the August 15th letter to the ALJ. Accordingly, it is also unclear why the ALJ concluded that Plaintiff's counsel's objection and request for a subpoena were untimely, given that counsel set forth his objections and made the request well before the deadline for doing so.

9

The Court of course acknowledges the Commissioner's argument that the ALJ properly denied Plaintiff's request for a subpoena because it did not comply with the other requirements of 20 C.F.R. § 416.1450(d)(2). (See doc. no. 14, pp. 13-14) (hereinafter "Comm'r.'s Br."). Specifically, the Commissioner points out that the request for a subpoena by Plaintiff's counsel did not detail the important facts Dr. Holoyda was expected to prove or demonstrate why those facts could not be proven without a subpoena. (See id.); see also 20 C.F.R. § 1450(d)(2); R. 210. That said, in his opinion, the ALJ does not mention these reasons in explaining his decision to deny the request for a subpoena. Rather, as explained in detail above, the ALJ relies on (1) a regulation that appears to be inapplicable to the instant case, and (2) the untimeliness of the request, a conclusion that is not supported by the record. While the Court is making no determination as to whether Dr. Holoyda should have been subpoenaed, the ALJ's decision regarding this issue does not apply the correct legal standards. See Wiggins, 679 F.2d at 1389 (noting that failure to apply the correct legal standards constitutes "grounds for reversal"). Accordingly, this case should be remanded. On remand, the ALJ should determine whether Plaintiff's counsel's request for the subpoena met the requirements of 20 C.F.R. § 416.1450(d)(2) and whether based on the information provided, the issuance of a subpoena "is reasonably necessary for the full presentation" of Plaintiff's case. 20 C.F.R. § 416.1450(d)(1).

In light of the Court's recommendation on the first issue raised by Plaintiff, it is not necessary to address her remaining arguments. However, the Court is compelled to briefly comment on Plaintiff's argument that the ALJ failed to consider Plaintiff's migraine headaches, singly and in combination with her other impairments. (See Pl.'s Br., pp. 11-12).

As Plaintiff correctly notes, "the ALJ must consider every impairment alleged." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (citations omitted). The Commissioner also acknowledges that in determining a claimant's RFC, the ALJ must consider the impact of all impairments, even those that have been found non-severe. (Comm'r.'s Br., p. 15 (citing 20 C.F.R. § 416.945(a)(2))). Plaintiff's history of migraine headaches is documented throughout the record. Indeed, Plaintiff sought treatment from both Dr. Gregorio Abad and Dr. Nikolay Banjiyev for, *inter alia*, migraine headaches. R. 216, 302-07, 312-18. While the frequency and intensity of Plaintiff's migraines had improved, Dr. Banjiyev noted in his most recent treatment notes in the record that Plaintiff's migraines were "persistent" and "intractable." R. 303. Furthermore, at the May 2006 hearing, Plaintiff testified that she gets headaches when she becomes stressed and that these headaches limit her abilities to drive and do other activities. R. 585-86, 595-96.

However, the ALJ's opinion does not even reference Plaintiff's migraines. The Court is aware that the ALJ found that Plaintiff had the severe impairment of "miscellaneous arthritic aches and pains." R. 21. However, given the fact that there is no specific mention of migraines in the ALJ's opinion, there is nothing to suggest that the ALJ included Plaintiff's migraines in the category of "miscellaneous arthritic aches and pains." The Court also notes that the ALJ discussed the fact that Dr. Banjiyev had diagnosed Plaintiff with pain and numbness in her limbs and carpal tunnel syndrome. R. 22, 318. On the same page in the record that the ALJ cites to regarding these diagnoses, Dr. Banjiyev's notes also reflect that he had diagnosed Plaintiff with migraine headaches. R. 318. However, as noted above, the ALJ failed to mention Plaintiff's migraine headaches in his discussion of Dr. Banjiyev's

11

records or elsewhere in his opinion. The Court acknowledges the Commissioner's argument that the decreasing frequency of Plaintiff's migraines and the absence of reports of such migraines in other records demonstrates that this condition was not a "significant, ongoing" problem. (See doc. no. 14, p. 15). However, this does not change the fact that the ALJ is required to consider all impairments, even those that are not severe, and the ALJ did not even mention Plaintiff's migraines in his opinion, much less their impact on her ability to work. Accordingly, on remand, the ALJ should also make findings regarding Plaintiff's migraine headaches and whether that impairment, singularly and in combination with other impairments, affects her ability to work.

Because the Court has recommended that this case be remanded, it must consider Plaintiff's request that the Court direct that this case be heard by a different ALJ on remand. (See Pl.'s Br., p. 17).[3] In support of this request, Plaintiff contends that the ALJ who issued the unfavorable decision has "lost his objectivity about this case." (Id.). Specifically, Plaintiff points to what she terms "the mocking tone" taken by the ALJ in his decision and cites several examples. (Id. at 17 & n.7). For instance, at the second step of the sequential evaluation process, the ALJ found that Plaintiff suffered from myofascial pain syndrome but in parentheses wrote "dubious." R. 21. Furthermore, in assessing Plaintiff's credibility, the ALJ discusses Plaintiff's activities of daily living, such as doing laundry and dishes, as well as the completion of her associate's degree, and concludes, "She is **NOT** very impaired, is she?" R. 25 (emphasis in original).

---

[3]The Court notes that the Commissioner does not express an opinion with respect to Plaintiff's request that this case be assigned to a different ALJ on remand.

The Eleventh Circuit has recognized the "crucial role [the ALJ plays] in the disability review process." Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996). Indeed,

> [n]ot only is [the ALJ] duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him. Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the integrity of the system.

Id. at 1401 (citing Johnson v. Mississippi, 403 U.S. 212, 216 (1971)). In Miles, the Eleventh Circuit concluded that the claimant was entitled to an "unbiased consideration of her application for benefits before a different ALJ" on remand based on objectionable comments made by the ALJ in his opinion. Id.

That said, the regulations set forth a specific procedure for a claimant to object to the ALJ assigned to her case. Indeed, 20 C.F.R. § 416.1440 states as follows:

> If you object to the [ALJ] who will conduct the hearing, you must notify the [ALJ] at your earliest opportunity. The [ALJ] shall consider your objections and shall decide whether to proceed with the hearing or withdraw. If he or she withdraws, the Associate Commissioner for Hearings and Appeals, or his or her delegate, will appoint another [ALJ] to conduct the hearing. If the [ALJ] does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another [ALJ].

20 C.F.R. § 416.1440. However, a claim of bias is waived if the claimant is aware of the facts giving rise to such a claim but fails to raise it in accordance with the regulations. See Stokes v. Astrue, No. 08-CV-1657, 2009 WL 2216785, at * 14 (M.D. Fla. July 23, 2009) (citing Hummel v. Heckler, 736 F.2d 91, 94 (3d Cir. 1984)).

Here, the comments to which Plaintiff objects are contained in the ALJ's April 13, 2007 opinion. Accordingly, Plaintiff's first opportunity to raise this issue would have been

13

in his request for review to the AC. However, a review of the brief submitted to the AC reveals that Plaintiff failed to raise the issue of the ALJ's bias in the request for review of the ALJ's decision. R. 8-10. Accordingly, "the Court is precluded from reviewing the issue of the ALJ's bias," and the request for re-assignment to a different ALJ should be denied. Stokes, 2009 WL 2216785, at * 14 (internal quotation marks and citation omitted). Of course, if this case is assigned to the same ALJ on remand, Plaintiff is free to request that the ALJ withdraw or raise this issue with the AC after the hearing in accordance with 20 C.F.R. § 416.1440. See id.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 24th day of May, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

14